# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSEPH BRIAN TAPSCOTT, | ) |
| Petitioner, | ) |
| vs. | ) Case No. 08-CV-177-JHP-PJC |
| JUSTIN JONES, Director, | ) |
| Respondent. | ) |

## OPINION AND ORDER

Before the Court is the petition for writ of habeas corpus (Dkt. # 1), filed by Petitioner, a state prisoner appearing *pro se*. Respondent filed a response (Dkt. # 7) to the petition, and provided the state court record necessary for resolution of Petitioner's claims (Dkt. #s 7, 8, and 9). Petitioner filed a reply (Dkt. # 12). For the reasons discussed below, the Court finds the petition shall be denied.

### *BACKGROUND*

Three separate events gave rise to multiple felony, misdemeanor, and traffic charges filed against Petitioner Joseph Brian Tapscott in Washington County District Court. First, on September 17, 2005, Melvin Monday, Chief of Police for Ramona, Oklahoma, effected a traffic stop of a motorcycle for failure to have two mirrors. Although the operator of the motorcycle stopped and talked briefly to Chief Monday, he attempted to flee on the motorcycle, but crashed it and escaped on foot. Chief Monday stood three feet away from the man and was able to get a good look at him. When the man fled, he left certain items with the crashed motorcycle, including a black bag holding 4 small ziploc baggies containing a total of approximately 20 grams of methamphetamine, and a set of digital scales.

The next incident occurred on October 10, 2005. On that date, Timothy Stringer, a police officer for Dewey, Oklahoma, attempted to stop a vehicle for speeding. The vehicle, a Mazda RX-7, did not stop. Officer Stringer pursued the vehicle. Oklahoma Highway Patrol Trooper Darrin Rose heard the radio call and set up a road block. The vehicle ran the road block. Trooper Rose assisted Officer Stringer in pursuit of the vehicle. Bartlesville police officers set up a second road block. The vehicle ran the second road block and proceeded to travel at a high rate of speed on a gravel road. Because of the dust from the gravel road, Officer Stringer was unable to see that the suspect vehicle had stopped in the middle of the road. Officer Stringer's patrol car collided with the suspect vehicle causing serious injuries to Officer Stringer. The driver of the vehicle fled on foot. Trooper Rose searched the abandoned vehicle and compiled an inventory that included the following: drugs later identified as methamphetamine hidden in the gearshift cover, a black duffle bag containing a pipe with residue later identified as methamphetamine, a .38 caliber Colt revolver loaded with six bullets, a manilla envelope containing a tax receipt bearing the name "Joseph B. Tapscott," a set of keys on a key ring emblazoned with "Joe's Keys," and two cell phones. The vehicle had not been registered within thirty days as required by Oklahoma law. No insurance verification form was found in the vehicle.

The last incident occurred on October 12, 2005. On that date, Petitioner called his neighbor, Donnie Montgomery, and asked him for a ride to Kansas. According to Mr. Montgomery, Petitioner had also called him on September 17, 2005, asking to be picked up just east of Ramona. In addition, on October 10, 2005, Petitioner called and talked to Mr. Montgomery's wife, Eva, telling her that the county, city, and Highway Patrol were after him. After receiving Petitioner's call on October 12, 2005, Mr. Montgomery called the Washington County Drug Task Force to report Petitioner's

conduct. Law enforcement officials instructed Mr. Montgomery pick up Petitioner to give him a ride as requested. With Petitioner riding in Mr. Montgomery's truck as a passenger, law enforcement officials effected a traffic stop and arrested Petitioner. Officials searched the truck and found a brown bag on the floorboard of the passenger's side containing over 43 grams of methamphetamine.

Petitioner was tried and convicted by a jury in Washington County District Court of Possession of a Controlled Dangerous Drug (Methamphetamine) With Intent to Distribute (Case No. CF-2005-452, based on events of September 17, 2005); Trafficking (in Methamphetamine) (Case No. CF-2005-453, based on events of October 12, 2005); Possession of a Controlled Dangerous Drug (Methamphetamine) (Count I) and Possession of a Firearm While Committing A felony (Count II) (Case No. CF-2005-454, based on events of October 10, 2005); Eluding a Police Officer (Count I) and Running a Roadblock (Count II) (Case No. CF-2005-456, based on events of October 10, 2005); Driving With a Suspended License (Count I) and Possession of Drug Paraphernalia (Count II) (Case No. CM-2005-647, based on events of October 10, 2005); Driving With a Suspended License (Count I) and Possession of Drug Paraphernalia (Count II) (Case No. CM-2005-648, based on events of September 17, 2005). He was also found guilty of traffic offenses as charged in Case Nos. TRC-2005-1294, TRC-2005-1295, and TRC-2005-1296. On March 7, 2006, the trial judge explained his rationale for following the jury's recommendations and sentenced Petitioner as follows: fifteen (15) years imprisonment and a $20,000 fine in Case No. CF-2005-452; life imprisonment and a fine of $200,000 in Case No CF-2005-453; five (5) years imprisonment and a $5,000 fine (Count I) and ten (10) years imprisonment and a $10,000 fine (Count II) in Case No. CF-2005-454; two (2) years imprisonment and a $2,000 fine (Count I) and five (5) years imprisonment and a $5,000 fine (Count II) in Case No. CF-2005-456; a $500 fine (Count I) and a $1,000 fine

(Count II) in Case No. CM-2005-647; $1,000 fine on each of Counts I and II in Case No. CM-2005-648; and fines totaling $585 for the traffic offenses. The sentences were ordered to be served consecutively. Petitioner was represented at trial and at sentencing by attorney Jim Conatser.

Petitioner filed a direct appeal in the Oklahoma Court of Criminal Appeals ("OCCA"). Represented by attorneys Robert Jackson and Steven Presson, he raised the following three (3) propositions of error:

> Proposition 1: Prosecutorial misconduct deprived Appellant of a fair trial and a reliable sentencing determination.
>
> Proposition 2: The prosecution's evidence was insufficient to support Appellant's conviction for possession of a firearm during the commission of a felony.
>
> Proposition 3: The prosecution improperly commented on Appellant's post-arrest, post-*Miranda* silence.

See Dkt. # 7, Ex. 1. In an unpublished summary opinion filed April 6, 2007, in Case No. F-2006-266 (Dkt. # 7, Ex. 3), the OCCA denied relief and affirmed the Judgment and Sentence of the district court.

On March 28, 2008, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1). In his petition, Petitioner identifies three (3) grounds for relief. The habeas grounds are the same as the grounds of error raised on direct appeal. See Dkt. # 1. In response to the petition, Respondent asserts that Petitioner's claims do not justify relief under 28 U.S.C. § 2254(d). See Dkt. # 7.

*ANALYSIS*

A.  **Exhaustion/Evidentiary Hearing**

Before addressing the claims raised in the petition, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent states that Petitioner has exhausted available state court remedies

for his habeas corpus claims. See Dkt. # 7 at 2, ¶ 5. The Court agrees and finds that the exhaustion requirement is satisfied in this case.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000).

**B.      Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, a petitioner may obtain federal habeas relief from a state court's adjudication of a claim, only if the state decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). In this case, the OCCA adjudicated Petitioner's claims on direct appeal. Therefore, Petitioner's claims shall be reviewed under § 2254(d).

**1. Prosecutorial misconduct (ground 1)**

As his first ground of error, Petitioner complains that during closing argument, the prosecutor used improper tactics to invoke societal alarm, to seek verdicts on the basis of community outrage, and to inflame and prejudice the jury. See Dkt. # 1.On direct appeal, see Dkt. # 7, Ex. 1, Petitioner

complained of numerous comments by the prosecutor, including the following: "[w]hen we talked in voir dire, we talked about the importance of this case not only to this defendant but to the people of Washington County," see Dkt. # 9, Tr. Trans. at 190; "[y]ou've got a man driving around your town -- meth," id. at 195; "[h]e's a drug trafficker. He's a drug distributor, big time; Washington County, big time," id. at 206. He also complained of the following comments as "community based" and "inflammatory":

> Understand what I'm telling you? Do you understand how important this is to the people of Washington County? Nearly getting caught, defiant, arrogant; not only after nearly getting caught, he's got a gun. He's got more methamphetamine, and he does it again right here in your county. Understand what I'm telling you? Understand the importance? So arrogant, so defiant that he runs roadblocks, puts peoples' live in danger. Listen, listen, listen to the importance of this. He's got a loaded .38 caliber Colt revolver right by him when he's got meth. He has no value on life. Do you understand what I'm telling you? Do you understand the importance of this case? And, he runs a felony roadblock and puts your officers' lives in danger. Not only does he put Stringer, not only does he put Darrin Rose, but he puts McCarty and Bevard; a person that does not value life that's got a big, big operation right here in your county. Understand? Understand the importance?
>
> * * * * *
>
> You know why he's here? He's not just here because he did it. That's not the only reason. He's so arrogant. He's so defiant. He doesn't think you are smart enough to figure it out. Bottom line, he's going to beat you just like he thinks he's beat everybody else. He doesn't think you're smart enough to figure it out, bottom line.

Id. at 209, 210. Lastly, Petitioner complained on direct appeal, see Dkt. # 7, Ex. 1, that the prosecutor asked the jury to return two life sentences, on both the possession and the trafficking charges. See Dkt. # 9, Tr. Trans. at 210. Defense counsel lodged no objection to the comments. Id. Therefore, the OCCA reviewed for plain error and found the claim to be without merit, as follows:

> [W]e find no plain error in the prosecution's closing argument as the comments neither "manipulate[d] nor misstate[d] the evidence." The prosecutor's comments were based on the evidence and his references to the community were not so

6

> repetitive or egregious so as to entice the jury to decide the case on the basis of societal alarm, or any reason other than the evidence presented during the trial.

(Dkt. # 7, Ex. 3 at 3 (citation omitted)).

Habeas corpus relief is available for prosecutorial misconduct only when the prosecution's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-648 (1974); Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998). Inquiry into the fundamental fairness of a trial requires examination of the entire proceedings. Donnelly, 416 U.S. at 643. "To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution." Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); see also Smallwood v. Gibson, 191 F.3d 1257, 1275-76 (10th Cir. 1999). The Tenth Circuit Court of Appeals has found "no practical distinction" between the formulations of plain error used by the OCCA and the federal due-process test, requiring reversal when an error "so infused the trial with unfairness as to deny due process of law." Thornburg v. Mullin, 422 F.3d 1113, 1125 (10th Cir. 2005) (quoting Estelle v. McGuire, 502 U.S. 62, 75 (1991)). Because the OCCA applied the same test required for a due process determination, this Court defers to its ruling unless it "unreasonably appli[ed]" that test. Id. (citing 28 U.S.C. § 2254(d)). A proceeding is fundamentally unfair under the Due Process Clause if it is "shocking to the universal sense of justice." United States v. Russell, 411 U.S. 423, 432 (1973).

Petitioner is not entitled to habeas corpus relief on this claim because he has failed to demonstrate that the OCCA's adjudication was contrary to, or an unreasonable application of federal law as determined by the Supreme Court. Even if the prosecutor's comments could be characterized as an appeal to societal alarm, they do not rise to the level of a due process violation. "While

improper appeals to societal alarm and requests for vengeance for the community to set an example are unwarranted, they are also not the type of comments that the Supreme Court has suggested might amount to a due process violation." Brecheen v. Reynolds, 41 F.3d 1343, 1356 (10th Cir. 1994) (quotation omitted); see also Jones v. Gibson, 206 F.3d 946, 959 (10th Cir. 2000). In light of the overwhelming evidence in the record of Petitioner's guilt, see Fero, 39 F.3d at 1474, the Court finds that the prosecutor's comments did not result in a deprivation of due process. In addition, although the sentences recommended by the jury were harsh, they were within the range of sentencing allowed by Oklahoma law. Furthermore, the jury did not recommend two life sentences as requested by the prosecutor demonstrating that the jury was not overcome by prejudice as a result of the prosecutor's comments. Therefore, the Court cannot find that the prosecutor's comments contributed to excessive sentences. Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d).

**2. Insufficient evidence (ground 2)**

As his second ground of error, Petitioner alleges that the State presented insufficient evidence to support his conviction for Possession of a Firearm During the Commission of a Felony. On direct appeal, Petitioner argued that the evidence was not sufficient to establish the required nexus between the firearm and the underlying felony. See Dkt. # 7, Ex. 1 at 11. The OCCA denied relief on this claim, finding as follows:

> [W]e find the evidence sufficient to support the conviction for possession of a firearm during the commission of a felony. Although Appellant was not physically present in the car when the gun was found, his visible presence in the car only moments before discovery establishes a sufficient nexus between the possession of the weapon and the underlying felony of possession of methamphetamine.

(Dkt. # 7, Ex. 3 (citations omitted)).

8

As stated above, a writ of habeas corpus will not be issued on a state claim adjudicated on the merits unless the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. at § 2254(d)(2). "[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Tenth Circuit authority is divided as to "whether, under AEDPA, we review a sufficiency-of-the-evidence issue as a legal determination under 28 U.S.C. § 2254(d)(1) or a factual finding under § 2254(d)(2) and (e)(1)." Romano v. Gibson, 239 F.3d 1156, 1164 n.2 (10th Cir. 2001); see also Dockins v. Hines, 374 F.3d 935, 939 (10th Cir. 2004). Under either standard, Petitioner's claim in this case fails.

In examining Petitioner's sufficiency of the evidence claim, the appropriate inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Both direct and circumstantial evidence are considered in determining whether evidence is sufficient to support a conviction. Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir. 1998). In evaluating the evidence presented at trial, the Court does not weigh conflicting evidence or consider witness credibility. Wingfield v. Massie, 122 F.3d 1329, 1332 (10th Cir. 1997); Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996). Instead, the Court must view the evidence in the "light most favorable to the prosecution," Jackson, 443 U.S. at 319, and "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993). Further, the Court evaluates the sufficiency of

9

the evidence by "consider[ing] the collective inferences to be drawn from the evidence as a whole." United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997) (quoting United States v. Hooks, 780 F.2d 1526, 1532 (10th Cir. 1986)). Under the AEDPA, the Court must decide whether the OCCA's decision that there was sufficient evidence to support a jury's finding of guilt was contrary to or an unreasonable application of Jackson. See 28 U.S.C. § 2254(d)(1); Spears v. Mullin, 343 F.3d 1215, 1238-39 (10th Cir. 2003).

This Court looks to Oklahoma law for the substantive elements of Possession of a Firearm During the Commission of a Felony applicable to the sufficiency of the evidence standard. See, e.g., Spears, 343 F.3d at 1238; Jackson, 443 U.S. at 324 n.16. Under Oklahoma law and the facts of this case, the State was required to prove that Petitioner knowingly and willfully possessed a firearm while committing the felony of possession of a controlled substance and that the possession of the firearm was connected to the commission of the felony. See Okla. Stat. tit. 21, § 1287; OUJI CR2d 6-38. Among the factors the jury could consider in determining whether the possession of the firearm was connected to the felony are that the firearm was possessed or strategically located for use during the commission of the felony, that the firearm was intended to be used if a contingency arose or to make an escape, and that the firearm was to be used either offensively or defensively in a manner which would constitute a threat of harm. Pebworth v. State, 855 P.2d 605, 607 (Okla. Crim. App. 1993) (setting forth factors and recognizing possession may be constructive as well as actual).

The jury heard Officer Stringer testify that on October 10, 2005, he saw a man fitting Petitioner's description driving the suspect vehicle moments before his patrol car collided with the vehicle in the middle of the gravel road where it had been abandoned. See Dkt. # 9, Tr. Trans. at

10

41. In addition, Trooper Rose testified that when he searched the vehicle, he found baggies containing methamphetamine hidden in the gearshift cover; a loaded .38 caliber Colt revolver positioned between the hump and the passenger seat, handle up, within reach of the driver; a manilla envelope containing a tax receipt and bearing the name "Joseph B. Tapscott"; and a "Joe's keys" key ring holding multiple keys. Id. at 51, 54, 55, 58. The Court finds that evidence, when viewed in a light most favorable to the State, was sufficient to allow the jury as a rational trier of fact to have found the essential elements of Possession of a Firearm During Commission of a Felony, including the requisite connection between the possession of the firearm and possession of a controlled dangerous substance, as recognized under Oklahoma law, beyond a reasonable doubt. Petitioner has failed to demonstrate that the OCCA's resolution of this claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, 28 U.S.C. § 2254(d)(1), or an unreasonable determination of the facts, 28 U.S.C. § 2254(d)(2). See Dockins, 374 F.3d at 939 (recognizing that the Tenth Circuit has not clearly settled whether sufficiency of the evidence on habeas review presents a question of law or fact). The Court finds habeas corpus relief shall be denied on this claim.

### 3. Improper comment on post-Miranda[1] silence (ground 3)

As his third ground of error, Petitioner complains that the prosecutor improperly commented on his post-arrest, post-Miranda silence. See Dkt. # 1. On direct appeal, Petitioner argued that during closing argument, the prosecutor made improper remarks concerning Trooper Rose's interview of Petitioner on October 12, 2005, shortly after Petitioner's arrest. See Dkt. # 7, Ex. 1 at 15. Petitioner specifically alleged that the prosecutor reviewed the testimony of Trooper Rose and

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

clearly invited the jury to infer guilt from Petitioner's post-arrest silence when he made the following statements during closing argument:

> Do you still own that car, that Mazda? "No, I sold it." When? "Well, I've still got it." How many of you people if you had sold your car would forget? I mean how many people, if someone came up to you, and said: Do you still own your car? I really don't know. I might have sold it. He was caught. He was trying to lie his way out of it. Well, who did you sell it to? "John." Uh-oh; see, we can check John. So, John who? "I can't remember his last name." Well, when is the last time you drove that car? Look and watch. When's the last time you drove that car? What does the defendant do? Darrin said, "He turned his eyes away from me and shook his head." What does that mean? You tell me; what does that mean? I mean he's looking at two life sentences. He has got guns. He's got money. He's got paraphernalia. He's got a roadblock. When is the last time you drove that car? He turns his head away. He turns his eyes away and shakes his head. What does that mean?

See Dkt. # 9, Tr. Trans. at 207-08. The record reflects that defense counsel lodged no objection to those comments by the prosecutor. Id. The OCCA rejected this claim, finding as follows:

> It is well established that it is improper for any comment to be made at trial concerning the silence of a defendant following a *Miranda* warning. *Warner v. State*, 2006 OK CR 40, ¶ 179, 144 P.3d 838, citing *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). However, where as here, the defendant waives his rights and voluntarily speaks with police, the prosecutor may properly comment on any statements or any refusals to answer made by Appellant. *Id. See also Pennington v. State*, 1995 OK CR 79, ¶ 37, 913 P.2d 1356, 1366; *Romano v. State*, 1995 OK CR 74, ¶¶ 14-15, 909 P.2d 92, 108; *Robedeaux v. State*, 1993 OK CR 57, ¶ 65, 866 P.2d 417, 432. This case is distinguishable from *United States v. Canterbury*, 985 F.2d 483, 486 (10th Cir. 1993), as it involves prosecutorial comments (not cross-examination as in *Canterbury*) and the prosecutor's statements, when read in context of the entire closing argument, "were not designed to draw meaning from silence," but were attempts to point out Appellant's inconsistent statements.

(Dkt. # 7, Ex. 3 (footnotes omitted)).

As noted by the OCCA, the government cannot fairly use a defendant's silence against him at trial as evidence of guilt when he has chosen to remain silent after being given Miranda warnings. Wainright v. Greenfield, 474 U.S. 284 (1986) (silence cannot be used as affirmative proof of a fact

in issue); Doyle v. Ohio, 426 U.S. 610, 619 (1976) (holding that "the use for impeachment purposes of petitioner's silence, at the time of the arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment"); Griffin v. California, 380 U.S. 609, 615 (1965) (Fifth Amendment prohibits prosecutorial comment on defendant's silence). Significantly, Supreme Court precedent does not establish a rule giving rise to constitutional error in every case in which the prosecutor refers to the defendant's post-arrest silence. See Grieco v. Hall, 641 F.2d 1029, 1033 (1st Cir. 1981). "In order for a witness' remarks to constitute an impermissible comment on silence, the remarks must (1) exhibit a manifest intent to comment on silence or (2) be of such a nature that a jury would naturally and necessarily construe the remarks as a comment on defendant's silence." Haberek v. Maloney, 81 F.Supp.2d 202, 210 (D. Mass. 2000) (citing United States v. Pennington, 20 F.3d 593, 599 (5th Cir. 1994); United States v. Ramos, 932 F.2d 611, 615 (7th Cir. 1991); United States v. Vera, 701 F.2d 1349 (11th Cir. 1983)); see also Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987). In addition, while the prosecution is barred from using a criminal defendant's silence against him after receipt of governmental assurances, Doyle, 426 U.S. at 620, that reasoning does not apply to cross-examination that merely inquires into prior inconsistent statements. Anderson v. Charles, 447 U.S. 404, 408 (1980). "Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent." Id. "When an accused is given his Miranda rights, and then waives those rights by voluntarily making statements, he may not rely on Doyle to object to the admission of those statements simply because the statements refer to the act of keeping silent." United States v. Lopez-Lopez, 282 F.3d 1, 12 (1st Cir. 2002).

In this case, Trooper Rose testified that at the scene of the arrest, he read Petitioner his rights under Miranda, Petitioner stated he understood, and agreed to talk to Trooper Rose. See Dkt. # 9, Tr. Trans. at 62. When asked about his involvement in the pursuit on October 10, 2005, Petitioner told Trooper Rose he did not know what he was talking about. Id. at 63. Later that day, at the Washington County Jail, Trooper Rose asked Petitioner if he owned a Mazda RX-7. Id. at 63. At first Petitioner said he used to own the vehicle, then he said he still had the vehicle but someone was interested in buying it. Id. Then, Trooper Rose asked when he had last driven the Mazda RX-7. Id. at 64. In response to that question, Trooper Rose stated that Petitioner "looked down and just shook [his head]." Id. Petitioner testified in his own defense, see id. at 151-181. He denied any involvement in the incident in Ramona, id. at 153, and denied being the driver of the Mazda RX-7 involved in the police chase on October 10, 2005, id. at 154. Petitioner testified that he spent both of those days at his house in Coffeyville, Kansas. Id. at 154, 155. He testified he knew nothing about the drugs recovered during the two incidents. Id. at 157, 158, 163, 164. During closing argument, as cited above, the prosecutor summarized the inconsistencies in Petitioner's statements, including his non-verbal response to Trooper Rose's question concerning the last time he had driven the Mazda RX-7. Id. at 207-08.

The record reflects that after being advised of his rights under Miranda, Petitioner did not exercise his right to remain silent and agreed to talk to Trooper Rose. Based on review of the trial record, the Court agrees with the OCCA's assessment that the prosecutor's remarks during closing argument "were not designed to draw meaning from silence," see United States v. Canterbury, 985 F.2d 483, 486 (10th Cir. 1993), but instead were comments on Petitioner's inconsistent statements regarding ownership of the Mazda RX-7. Even if the comments were improper, Petitioner would

not be entitled to relief unless the record as a whole demonstrates that the error was not harmless beyond a reasonable doubt. Id. In this case, the evidence of Petitioner's guilt was overwhelming. Any error was harmless. Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d).

## *CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for writ of habeas corpus (Dkt. # 1) is **denied**.
2. A separate judgment shall be entered in this matter.

**DATED** this 31st day of March 2011.

*[signature]*
James H. Payne
United States District Judge
Northern District of Oklahoma